E-FILED
Tuesday, 04 February, 2014  02:55:44 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANTHONY WIMBERLY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 10-CV-3308 |
| | ) | |
| DR. OBAISI, et al., | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, currently incarcerated in Shawnee Correctional Center, pursues a claim for deliberate indifference to his serious medical needs regarding his ankle.

On September 5, 2012, the Court denied summary judgment to Dr. Obaisi.   Dr. Obaisi filed supplemental materials, which were docketed as a supplemental summary judgment motion.   That motion was granted because Plaintiff failed to respond.   Plaintiff moved to reconsider, asserting that he had not received a copy of the supplemental motion. Plaintiff's motion to reconsider was granted, and Plaintiff has now

responded to the supplemental motion for summary judgment, which is before the Court.

The facts are as follows.   In 2001, Plaintiff fell while detained in the Cook County Jail, injuring his ankle.   Plaintiff had surgery on the ankle while still detained by the Jail.   Plaintiff was purportedly told by the surgeon that the surgery did not go as planned and that Plaintiff should wear a special sock and ankle brace until Plaintiff was released from prison and able to get the ankle fixed properly.   (Pl.'s Dep. pp. 7-8.)   According to Plaintiff, the brace and the special socks are needed to hold his ankle bones properly in place and to reduce swelling.   The brace that was issued by the Cook County Jail after the surgery appears to be some sort of Neoprene brace.   (Pl.'s Resp. to Original Summary J. Mot., Ex. B, d/e 32, p. 6.)

Plaintiff's statement about what the surgeon said is inadmissible hearsay.   However, there is evidence that the surgery did not work as hoped.   Plaintiff filed a case in the Northern District of Illinois in 2004 regarding the denial of low gallery placement in an IDOC prison, attaching

to his complaint a radiological report dated 7/19/12, which states that one of the surgery screws had come loose and had "migrated medially over the fibula." Wimberly v. Johnson, et al., 04-4355 (N.D. Ill.)(exhibit to Complaint, d/e 1.)   Nothing has been done to correct this problem as far as the Court can tell.

Plaintiff was transferred from Cook County Jail to the Illinois Department of Corrections in May of 2002.   According to Plaintiff, every IDOC prison in which he resided allowed him to wear the sock and brace until he arrived at Logan Correctional Center on August 6, 2008.   At Logan, a nurse purportedly confiscated the brace during Plaintiff's initial health screening and told Plaintiff that Plaintiff must obtain Dr. Obaisi's approval to keep the brace.   Whether Plaintiff was still wearing his therapeutic sock is not in the record.   Plaintiff was given a low bunk permit, but Dr. Obaisi avers that the low bunk permit was issued because Plaintiff is obese.   (Dr. Obaisi Aff. para. 12.)

According to Plaintiff, Plaintiff asked Dr. Obaisi for the ankle brace during Dr. Obaisi's first examination of Plaintiff in August 2008.   Dr.

Obaisi purportedly denied Plaintiff's request, telling Plaintiff the brace was unnecessary.   (Pl.'s Dep. pp. 11-13).   Plaintiff transferred out of Logan to Big Muddy Correctional Center on October 9, 2010.

Dr. Obaisi avers that he did not deny Plaintiff the ankle brace or any treatment for Plaintiff's ankle.   According to Dr. Obaisi, Plaintiff made no complaints about his ankle, did not ask for a brace, and did not have the brace when he came to Logan Correctional Center.   Dr. Obaisi further avers that, based on his medical judgment, Plaintiff had no medical need for a brace, therapeutic socks, or any other treatment for his ankle.   (Dr. Obaisi Aff. paras. 13-21.)

At the summary judgment stage, the Court construes inferences in the non-moving party's favor.   On this record, a juror could find that Plaintiff had and has a serious medical need for some kind of treatment for his ankle.   The loose screw in Plaintiff's ankle and Plaintiff's description of his pain and difficulty moving allow that inference.

The difficult question is whether a juror could find that Dr. Obaisi knew about Plaintiff's ankle condition.   Plaintiff argues that his medical

records clearly show his need for treatment for his ankle, including a brace, but they do not.   When Plaintiff was first transferred from Cook County Jail to Stateville Correctional Center in 2002 for processing, Plaintiff's medical records show that Plaintiff had a brace and cane; his medical history indicated that he had had ankle surgery and had an ankle plate and screws in his right ankle.   (Health status and reception screening form, d/e 21, p. 3.)   However, medical records for the next four years from various prisons note that Plaintiff was not receiving any treatment for his ankle nor any assistive devices, and that Plaintiff was mobile.   The medical records are replete with treatment of Plaintiff's hypertension, chest pain, H pylori infection, kidney problems, and other health problems, but little or no mention is made of Plaintiff's ankle.   There is no indication that Dr. Obaisi saw or was aware of the 2002 x-ray showing the loose screws during Plaintiff's incarceration in Logan Correctional Center, which began four years later.

When Plaintiff arrived at Logan Correctional Center in August 2008, Plaintiff's 2001 ankle surgery was noted as part of Plaintiff's medical

history, but no brace or other assistive device was mentioned.   There is no
written record of Plaintiff complaining of ankle problems at Logan
Correctional Center until he filed a grievance on May 25, 2010, in which
Plaintiff stated that he had repeatedly asked Dr. Obaisi and the other
medical staff for "a brace, therapeutic socks, physical therapy, and pain
killers for my painful medical condition.   My right ankle has a plate with 5
screws and the bone was not set."   (3/25/2010 grievance, d/e 48-4, p.
3)(misspellings corrected.)   The grievance was denied for the stated
reasons that the medical records showed that Plaintiff had never sought
treatment for his ankle.   In denying the grievance, officials told Plaintiff to
sign up for sick call if he needed treatment for his ankle.   Id.   Plaintiff
does not say what actions he took after his grievance was denied to try to
obtain treatment for his ankle.

In the Court's opinion, what this case comes down to is Plaintiff's
word that he repeatedly asked Dr. Obaisi for treatment for his ankle
against Dr. Obaisi's word that Plaintiff never complained of any ankle
problems to Dr. Obaisi.   As discussed above, the medical records on file

support Dr. Obaisi's version.   Plaintiff is vague about the number of times he asked for help with his ankle at Logan, who he asked, and how he asked. To find Dr. Obaisi deliberately indifferent on this record, a juror would arguably have to believe that Dr. Obaisi and all the other medical staff at Logan knowingly failed to record Plaintiff's purported requests for ankle treatment in Plaintiff's medical records.

On the other hand, Plaintiff argues that his ankle problem was so obvious that even a layperson would recognize the need for treatment. Plaintiff also argues that he did not seek care for his ankle in other prisons because he was allowed to wear the brace.   Plaintiff vigorously disputes Dr. Obaisi's averment that Plaintiff did not complain to Dr. Obaisi about his ankle.   Plaintiff argues that an inference arises that he did complain from the obvious and severe nature of his injury.

The Court must credit Plaintiff's testimony over Dr. Obaisi's at this stage.   Resolving the case in favor of Dr. Obaisi would require the Court to weigh conflicting evidence, which the Court is not permitted to do at the summary judgment stage.   <u>Stokes v. Board of Educ. of the City of</u>

Chicago, 599 F.3d 617 (7th Cir. 2010)("In deciding a motion for summary judgment, neither the district court nor this court may assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.")   Summary judgment must, therefore, be denied to Dr. Obaisi.

As for Defendant Wexford Health Sources, Inc., Plaintiff has no evidence that his lack of treatment is attributable to a policy or practice of Wexford.   Jackson v. Ill. Medi-Car, Inc., 300 F.3d 760, 766 n. 6 (7th Cir. 2002)(private corporations acting under color of state law are treated as municipal entities for purposes of 42 U.S.C. Section 1983; Billings v. Madison Metropolitan School Dist., 259 F.3d 807, 816 (7th Cir. 2001)(municipality liable under § 1983 only if municipality had unconstitutional practice or policy which caused deprivation).   However, whether Plaintiff seeks injunctive relief is not clear.   Plaintiff does not name his current treating doctors, but he does assert that the medical staff at his current prison refuse to treat his ankle because of this ongoing case.   If Plaintiff does seek injunctive relief, Wexford may be a necessary Defendant, in order to

avoid Plaintiff having to start over every time he is transferred.

IT IS THEREFORE ORDERED:

    1)   Defendants' supplemental summary judgment motion is

       denied

(d/e 48).

    2)   A status conference is set for February 24, 2014 at 9:30

a.m.    Plaintiff shall appear by video conference.   Defense counsel

shall appear in person.

ENTERED: February 4, 2014

FOR THE COURT:

                  **s/Sue E. Myerscough**
                    SUE E. MYERSCOUGH
                    UNITED STATES DISTRICT JUDGE